[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15024
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 23, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00042-CR-WCO-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES R. VANBRACKLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 23, 2010)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Charles R. Vanbrackle appeals his conviction for receiving child

pornography, in violation of 18 U.S.C. §§ 2252(a)(2)(A) and 2256(8)(A). On appeal, Vanbrackle argues that (1) the search of his home was illegal because the search warrant lacked probable cause, as the supporting affidavit failed to identify a nexus between the criminal activity and Vanbrackle's home; (2) if the search warrant affidavit was deficient, the good faith exception to the exclusionary rule could not be applied because the deficiency in the search warrant affidavit was known to the agent who applied for and executed the search warrant; and (3) Vanbrackle's statements to law enforcement officers during the execution of the search warrant were involuntary and, thus, inadmissible.

Notably, neither the magistrate judge nor the district court addressed whether the search warrant established probable cause that a search of Vanbrackle's residence would result in discovery of evidence that he had received child pornography. Rather, both presumed that the supporting affidavit failed to identify a nexus between the criminal activity and the residence to be searched but found that the good faith exception to the exclusionary rule applied. Therefore, like the district court, we decline to address whether the affidavit established probable cause for the search warrant and instead address only the good faith exception to the exclusionary rule and the voluntariness of Vanbrackle's statements to law enforcement.

I.      Good Faith Exception to the Exclusionary Rule

We review *de novo* the legal issue of whether the good faith exception to the exclusionary rule, as articulated in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), applies to a search, but "the underlying facts upon which that determination is based are binding on appeal unless clearly erroneous." *United States v. Robinson*, 336 F.3d 1293, 1295 (11th Cir. 2003) (quotation omitted).

The Fourth Amendment provides for the right to be free of unreasonable searches and seizures, and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In order to establish probable cause, the affidavit supporting the search warrant must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (quotation omitted). "Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution." *Id.* at 1312. "The exclusionary rule, as it is known, is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* (quotation omitted).

In *Leon*, the Supreme Court explained that the good faith exception to the

exclusionary rule "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Id.* at 1313. The exception applies in all but four circumstances, two of which Vanbrackle relies upon in the instant case: (1) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and (2) where the "warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* (quotations omitted). In determining whether these exceptions apply, we consider the totality of the circumstances surrounding issuance of the warrant. *United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir. 1985).

"The *Leon* good faith exception requires suppression only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Martin*, 297 F.3d at 1313 (quotation omitted). "The purpose of the exclusionary rule is to deter unlawful police misconduct; therefore, when officers engage in objectively reasonable law enforcement activity and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies."

4

*Id.* (quotation omitted). "It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." *Leon*, 468 U.S. at 923 n.24, 104 S. Ct. at 3420 n. 24. Thus, the good faith inquiry asks whether a reasonably well-trained officer would have known that the search was illegal because his affidavit failed to establish probable cause. *Malley v. Briggs*, 475 U.S. 335, 345, 106 S. Ct. 1092, 1098 (1986).

We agree with the district court that the good faith exception to the exclusionary rule applies to the affidavit underlying the search warrant of Vanbrackle's residence. First, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Martin*, 297 F.3d at 1313. To the contrary, it was reasonable for Agents Blackwell and Witrick to believe that the information contained in the affidavit was sufficient to support a finding of probable cause that evidence of the unlawful receipt of child pornography would be found at Vanbrackle's residence. The facts alleged within the search warrant affidavit indicate that (1) screen names registered to Vanbrackle at 253A Little River Lane, Rabun Gap, Georgia, were implicated in four other cases involving the transmission or solicitation of child pornography over the internet; (2) Vanbrackle continued to reside at 253A Little

5

River Lane, Rabun Gap, Georgia; (3) Vanbrackle was believed to be a collector of child pornography based on his activities of sending and receiving child pornography and requests to exchange pictures of skimpily dressed children with other AOL users; and (4) the tendency of collectors of child pornography, such as Vanbrackle, was to retain and store images of child pornography on their computers. Further, at the suppression hearing, Jim Persinger, a computer forensic cybercrimes specialist, testified that people who collect child pornography do not normally download child pornography at a public place, but typically view it at their residence or place of employment.

While Vanbrackle argues that this evidence failed to establish that unlawful e-mail transmissions were sent or received by him at his residence, he provides no legal citation to support his contention that IP address information is required to establish a link between an individual's electronic transmission of child pornography and that same individual's personal residence. *Cf. United States v. Bach*, 400 F.3d 622, 627–28 (8th Cir. 2005) (rejecting appellant's assertion that a valid warrant for searching his home computer could not have been obtained without cross references between his telephone records and IPs provided by his service provider). Although IP address information could have definitively shown that a computer used at Vanbrackle's home received the images in question, *see*

6

*United States v. Perrine,* 518 F.3d 1196, 1202–03, 1205 (10th Cir. 2008) (holding that the search warrant affidavit established probable cause to search the appellant's home in part because it included IP address information associated with the appellant's screen name), Agent Blackwell was only obligated to provide enough facts to show a fair probability that evidence of a crime would be found at Vanbrackle's residence. *Illinois v. Gates*, 462 U.S. 213, 235, 103 S. Ct. 2317, 2330 (1983) (stating that "only the probability, not a prima facie showing, of criminal activity is the standard of probable cause (quotation omitted)).  Agent Blackwell satisfied this obligation, and it was not unreasonable for Agents Blackwell or Witrick to conclude that someone who was connected, by use of screen names registered to him at his personal residence, with four other investigations involving the transmission or solicitation of child pornography over the internet, was a collector of child pornography.  Further, based on the profile information that collectors of child pornography retained and organized their collections on their personal computers and the fact that Vanbrackle continued to reside at 253A Little River Lane, Rabun Gap, Georgia, the agents could have reasonably inferred that Vanbrackle stored his collection of child pornography on a home computer.  *See Perrine*, 518 F.3d at 1206–07 ("The observation that images of child pornography are likely to be hoarded by persons interested in

7

those materials in the privacy of their homes is supported by common sense and the cases." (quotation omitted)); *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002) (holding that an affidavit established a sufficient nexus between the defendant's residence and the transfer of child pornography because it provided "evidence that he lived there and that, in her experience, pedophiles maintain their child pornography in a secure place").

Moreover, we reject Vanbrackle's suggestion that the search warrant was deficient because Blackwell failed to reference in the affidavit the absence of IP addressees or the fact that no wireless network connection was found at his home. Vanbrackle has not alleged that these omissions were deliberately false or reckless. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997) ("[A] warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit." (quotation omitted)). In any event, the exclusion of IP address information is not dispositive of the probable cause determination, *see Bach*, 400 F.3d at 627–28, nor would the absence of a wireless internet network have prevented a finding of probable cause, given the existence of other means of accessing the internet, *see Madiwale*, 117 F.3d at 1327 (stating that "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have

8

prevented a finding of probable cause").

In sum, Vanbrackle has failed to establish that Agent Blackwell was "dishonest or reckless in preparing [his] affidavit" or that Blackwell and Witrick could "not have harbored an objectively reasonable belief in the existence of probable cause" on the affidavit's facts. *Martin*, 297 F.3d at 1313 (quotation omitted). Accordingly, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*

We also reject Vanbrackle's second claim that the "warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* Vanbrackle has not shown that the warrant lacked particularity in terms of the place to be searched or items to be seized. To the contrary, the warrant described and provided directions to the residence at 253A Little River Lane, Rabun Gap, Georgia, and the warrant identified eleven particular categories of evidence that could be seized. Rejecting both of Vanbrackle's challenges, we conclude that the district court did not err in determining that the *Leon* good faith exception to the exclusionary rule applied.

II.    Admissibility of Vanbrackle's Statements

Vanbrackle next argues that his statements during the search were

inadmissible because the circumstances under which he made the statements were inherently coercive. The district court's ultimate conclusion on the voluntariness of a confession, or the waiver of rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), "raises questions of law to be reviewed *de novo*." *United States v. Barbour*, 70 F.3d 580, 584 (11th Cir. 1995) (quotation omitted). We determine whether a statement was made voluntarily, and thus was "the product of an essentially free and unconstrained choice," by examining the totality of the circumstances. *Hubbard v. Haley*, 317 F.3d 1245, 1252 (11th Cir. 2003).

Under *Miranda*, officers must advise an individual who is in custody of the following: (1) his right to remain silent; (2) that, if he chooses to speak, anything he says can be used against him in court; (3) his right to consult with a lawyer and have his lawyer be present during interrogation; and (4) an explanation that, if he is indigent, a lawyer will be appointed to represent him. 384 U.S. at 467–73, 86 S. Ct. at 1624–27. An individual may effectively waive these rights "provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444, 86 S. Ct. at 1612. For inculpatory statements to be constitutionally admissible against a defendant, the waiver must have been (1) "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) "made with a full awareness of both the nature of the right

10

being abandoned and the consequences of the decision to abandon it." *Barbour*, 70 F.3d at 585 (quotation omitted). Statements obtained in violation of *Miranda*, whether exculpatory or inculpatory, are not admissible at trial. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612.

The government must "prove by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1318 (11th Cir. 2010), *cert. denied*, *Cervantes-Guzman v. United States*, 130 S. Ct. 2121, *and cert. denied*, 130 S. Ct. 2123, *and petition for cert. filed*, (U.S. Jun 02, 2010) (No. 10-5530). Moreover, "the standard for evaluating the voluntariness of a confession is whether a person made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1362 (11th Cir. 1984) (quotation and citation omitted). "Voluntariness depends on the totality of the circumstances and must be evaluated on a case-by-case basis." *Id.* Among the factors we consider are "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." *Hubbard*, 317 F.3d at 1253. Further, "a signed *Miranda* waiver form is

usually strong proof that a suspect voluntarily waived his rights, [but] it is not conclusive on this issue." *Hart v. Att'y Gen. of State of Fla.*, 323 F.3d 884, 893 (11th Cir. 2003) (quotation omitted).

We agree with the district court that the totality of the circumstances demonstrate that Vanbrackle's statements to law enforcement officers were voluntary. Before Blackwell and Witrick proceeded with any questioning, Vanbrackle affirmed that he was willing to speak with the agents, and the agents advised him of his rights and the nature of their investigation. Both an audio recording and a signed waiver form document that Vanbrackle had been informed of his *Miranda* rights before he consented to be interviewed. *See id.* Vanbrackle indicated on the waiver-of-rights form that he had obtained four years of college education. *See Hubbard*, 317 F.3d at 1253. While approximately eight law enforcement officers participated in the execution of the search warrant, some of whom had their guns drawn upon entry, neither Blackwell nor Witrick drew their guns during the interview, and no one stood guard over Vanbrackle. Witrick and Blackwell interviewed Vanbrackle at his kitchen table, while other law enforcement officers physically searched the home and conducted a forensic search of his computer. During the interview, Vanbrackle was not handcuffed, and he did not at any point ask to stop the questioning, nor did he request an

12

attorney. Further, there is no evidence that the agents made any promises or threats to induce his statements. *See id.* In sum, Vanbrackle's post-*Miranda* statements were not involuntary in that they were not the product of "intimidation, coercion, or deception." *Barbour*, 70 F.3d at 585. Thus, the district court did not err in denying Vanbrackle's motion to suppress his statements, and we affirm Vanbrackle's conviction.

AFFIRMED.[1]

---

[1] Appellant's request for oral argument is denied.